**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**DANIEL INTERNICOLA, individually and on behalf of others similarly situated,**

Plaintiff,

v.

**MORTGAGEPROS, LLC.;**

Defendant.

**Case No.: 6:25-cv-01613-WWB-LHP**

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Daniel Internicola ("Plaintiff") hereby opposes Defendant MortgagePros LLC's ("Defendant") Motion to Dismiss Plaintiff's First Amended Complaint.

## I. INTRODUCTION

Each of Defendant's three arguments lack merit. First, Defendant argues that 47 U.S.C. § 227(c) of the Telephone Consumer Protection Act ("TCPA") does not apply to text messages. However, this is not the case. Plaintiff's position is supported by a plain reading of the statutory text, its legislative history and purpose, subsequent

rulings by the FCC, sound public policy, and nearly every other federal circuit which has addressed this issue. Second, Defendant incorrectly argues that Defendant's calls and texts fall within an exemption time period in which to comply. The clear language of the regulation supports no such bright-line rule whereby consumer withdrawals of prior consent can be unreasonably flouted without consequence. Furthermore, it is disingenuous for Defendant to ignore FCC regulations and rulings regarding whether text messages are violations and then rely on an FCC regulation for a perceived exemption from the statute. Defendant cannot have it both ways. Finally, Defendant argues that Plaintiff cannot bring a private right of action under 47 C.F.R. § 64.1200(c). This is plainly false based on statutory interpretation and relevant case law.

## II. STATEMENT OF FACTS

At all relevant times, Plaintiff was assigned, and was the owner of, a cellular telephone number ending in 4683 (the "Cell Phone"). Pl's First Am. Compl., ¶ 37, ECF No. 13. Additionally, Plaintiff had registered his Cell Phone with the National Do Not Call Registry on or about February 4, 2008. *Id*. at ¶ 79. Plaintiff uses the Cell Phone to administer household and family affairs, including financial affairs such as those discussed herein. Plaintiff is the sole user and/or subscriber of the Cell Phone. *Id*. at ¶ 39.

In or around April 2025, Plaintiff sought Defendant's services while pursuing options for mortgage refinancing. *Id.* at ¶ 40. To that end, Plaintiff entered into a business relationship with Defendant. By the beginning of July 2025, Plaintiff's relationship with Defendant deteriorated to an unsalvageable degree due to Defendant's communication practices, which Plaintiff found evasive, inconsistent, and concerning. *Id.* at ¶ 41. Specifically, Plaintiff became concerned that Defendant was not being fully transparent with Plaintiff about the refinancing, especially in terms of potential hidden fees. *Id.* at ¶ 42. Plaintiff sought out a different company with whom Plaintiff was far more satisfied, particularly given the stark difference Plaintiff perceived between Defendant's communication practices compared to those of the new mortgage company (hereafter the "New Company"). *Id.* at ¶ 43.

Consequently, on July 1, 2025 Plaintiff contacted Defendant by phone and communicated to Defendant that Plaintiff was terminating his and Defendant's business relationship. *Id.* at ¶ 44. Plaintiff explicitly directed Defendant to transfer the appraisal documents to the New Company. *Id.* at ¶ 44. During Plaintiff's July 1, 2025 conversation with Defendant, Plaintiff explicitly withdrew any prior express consent for Defendant to contact Plaintiff for any reason other than to confirm that Plaintiff's appraisal had been transferred to the New Company. *Id.* at ¶ 45 Plaintiff's verbal withdrawal of consent to receive communications — including solicitations — from Defendant was an effective revocation of any prior consent pursuant to 47 C.F.R. §

64.1200(a)(10). *Id.* at ¶ 46. Plaintiff's revocation terminated the established business relationship for purposes of telephone solicitation between Plaintiff and Defendant as defined in 47 C.F.R. § 64.1200(f)(5). *Id.* at ¶ 47.

On July 1, after Plaintiff revoked prior consent to receive telephone communications from Defendant, Defendant, through its employee identified as "Nick," texted the Cell Phone from 586-286-8939, saying "Dan I talked with my pricing director and have been able to drop your costs significantly. Give me a call." *Id.* at ¶ 48. Plaintiff replied reminding Defendant that Plaintiff would be moving forward with the New Company and to "Please get the appraisal transferred. Thank you[.]" *Id.* at ¶ 49. Defendant replied again, saying, "Since you are so close to closing with our company, we are discounting you significantly on the costs." *Id.* at ¶ 50.

After Plaintiff reiterated his refusal to entertain further negotiations with Defendant, Defendant replied once again, contending an employee would need to reach out to discuss the proper documentation Plaintiff's New Company would need to send Defendant. *Id.* at ¶ 51-52. The message guilted Plaintiff, saying, "I was only doing my due diligence as a professional to put you in the best financial position possible" and "I . . . take it very personal (sic.) when someone feels like they haven't received the best from me." *Id.* at ¶ 53.

Alongside Defendant's moralizing overtures, its efforts at solicitation continued. *Id.* at ¶ 54. Defendant's reply closed, "I went ahead and sent you an email with a closing

disclosure with a rate of 4.75% . . . Since you are this close to closing it's the least I could do for you both." *Id.* at ¶ 54. Plaintiff replied to Defendant, reiterating "Please transfer the appraisal." *Id.* at ¶ 55. Defendant continued refusing to honor Plaintiff's wishes, sending yet another lengthy missive which concluded, "Bottom line you're saving you and your family $2000 a month the way I have it set up now." *Id.* at ¶ 56. Plaintiff reiterated, "We're moving forward with [New Company]. Please transfer appraisal." *Id.* at ¶ 57. Defendant sent three more text messages badgering Plaintiff that "None of [this] is necessary though. With you this close to closing theres (sic.) nothing we can't do that another company using that same lender can" and concluding "I got your costs down to 4k by pulling some strings. It's in your email." *Id.* at ¶ 58. Plaintiff refused to reply further to Defendant's July 1 messages. *Id.* at ¶ 59.

On July 1, Plaintiff received three unwanted phone calls from Defendant. *Id.* at ¶ 60. Two from 586-286-8939 and one from 586-209-6343. On July 3, Defendant sent yet another unsolicited text solicitation from its phone number 586-286-8939. *Id.* at ¶ 61. The text message began, "Hey Daniel, just so you are aware, our offer still stands . . . You could be closed by the beginning of next week," and contained details of Defendant's loan offer to Plaintiff. The message closed, "Let's get this done for you and your family." *Id.* at ¶ 61. Plaintiff replied to Defendant with an unequivocal reassertion of his July 1 revocation, "Please stop texting me. Thanks." *Id.* at ¶ 62. Defendant ignored this explicit directive, replying "You're literally at closing do you

think anything they're promising you by restarting the entire process is any better than what I have ready for you to close on[?]" *Id*. at ¶ 63 Defendant sent a further message, "I'm just curious." *Id*. at ¶ 64. Defendant sent a further message, "How is restarting benefiting you?" *Id*. at ¶ 65.

On July 7, Defendant sent Plaintiff an additional message from 586-286-8939 saying, "Good morning Daniel, are you ready to get your loan closed up?" *Id.* at ¶ 66. Also, on July 7 from 586-286-8939, Defendant sent a message reading "Are you aware you're not in process with this other company?" *Id.* at ¶ 67. Additionally, on July 7, Plaintiff received three unwanted phone calls from Defendant. *Id.* at ¶ 68. Two from 586-996-3123 and one from 586-495-5173. On July 9, Defendant sent an additional message from 586-286-8939 reading, "Have you reviewed your offer with my company? The only thing left for you to complete is your payment for the pest inspection." *Id.* at ¶ 69.

An hour after its previous July 9 text solicitation, Defendant sent Plaintiff's Cell Phone a message from 586-996-3123, identified as being sent on behalf of Defendant by an employee identified as "Vince . . . one of the directors in Nick's division." *Id.* at ¶ 70. This was the first occasion Plaintiff had received messages from this number, having never corresponded with this number in the course of the refinancing discussions prior to Plaintiff revoking consent and withdrawing from the business relationship with Defendant on July 1. *Id.* at ¶ 71. Through the July 9 solicitation from

its employee, Vince, Defendant again flouted Plaintiff's revocation, emphasizing that Plaintiff was "just one condition away from closing" and highlighting Defendant's supposed charitability in "eliminat[ing] $30,000 in closing costs" in a further effort at solicitation aimed at getting Plaintiff to reverse their decision to take their business elsewhere. *Id.* at ¶ 72. Plaintiff responded, "Transfer the appraisal and please stop contacting me." *Id*. at ¶ 73.

Defendant ignored Plaintiff's clear reply, badgering Plaintiff that it "has invested significant time and effort into your loan" and lecturing him that "[a]t this point, it's hard to understand the lack of communication on your end regarding why you're refusing to close." *Id.* at ¶ 74. Despite Plaintiff withdrawing consent to receive further communications from Defendant, Defendant persisted to repeatedly contact Plaintiff's Cell Phone in an effort to overcome Plaintiff's objections to continuing Plaintiff and Defendant's business relationship and effectively deprive Plaintiff of his choice of mortgage company. *Id.* at ¶ 75.

On or about September 16, 2025, Defendant sent an additional text message to Plaintiff's Cell Phone. *Id.* at ¶ 76. The message read:

> This is Nick Consiglio, Executive Loan Officer @ Mortgage Pros. With rates dropping from the last federal meeting, there hasn't been a better time in the past 2 years to look into the following:
> Cash-out to pay off debt
> Cash for upgrades
> Lower rate & payment
> Which fits your goals best?

G: [bit.ly link]

On or about September 18, 2025, Defendant sent an additional text message to Plaintiffs' Cell Phone containing substantially similar language. *Id.* at ¶ 77, Hence, Defendant sent additional text messages to Plaintiffs' Cell Phone promoting Defendant's financial services more than two months after their express revocation of consent to receive telephone communications from Defendant. *Id.* at ¶ 78.

## III. LEGAL STANDARD

A complaint survives a motion to dismiss if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court ruling on a motion to dismiss a complaint accepts the well-pled factual allegations as true and views the facts in the light most favorable to the plaintiff. *See Jones v. Fransen*, 857 F.3d 843, 850 (11th Cir. 2017). "Under Rule 12(b)(6), dismissal is proper when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Allen v. USAA Cas. Ins. Co.*, 790 F. 3d 1274, 1278 (11th Cir. 2015) (quotation marks omitted).

## IV. ARGUMENT

### A. STATUTORY INTERPRETATION SUPPORTS THE INCLUSION OF TEXT MESSAGES IN SECTION 227(c) OF THE TCPA.

Defendant argues that, because 47 U.S.C. § 227(c)(5) affords a private right of action to "any person who has received more than one telephone call . . . in violation of the regulations prescribed under this subsection" but does not specifically include the term 'text messages,' that the TCPA is powerless to reach text messages sent in defiance of a consumer's stop request. However, Defendant's myopic reading of section 227(c)(5) ignores key facts about (1) the context of the subsection, (2) the reasoned decision-making of the FCC, and (3) congressional intent. For these reasons, Defendant's argument fails.

i. <u>A plain reading of the statute includes text messages in the definition of 'calls'.</u>

"Words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). To "ascertain[] the plain meaning of [a] statute, [a] court must look to the particular statutory language at issue, *as well as the language and design of the statute as a whole*." *K Mart Corp. v. Cartier Inc.*, 486 U.S. 281, 291 (1988) (emphasis added). In interpreting statutory language, lawyers are admonished against "slicing a single word from a sentence, mounting it on a definitional slide, and putting it under a

microscope in an attempt to discern the meaning of an entire statutory provision." *Wachovia Bank N.A. v. United States*, 455 F.3d 1261, 1267 (11th Cir. 2006). Defendant's arguments regarding the meaning of the term "call" evince this variety of context-blind interpretation.

Section 227(c) of the TCPA protects consumers' rights "to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). These solicitations are defined as a "telephone call or message." 47 U.S.C. § 227(a)(4). The TCPA defines the term "telephone solicitations" as "the initiation of a telephone call or message." 47 U.S.C. § 227(a)(4). It does not define the word "call" as it appears in sections 227(b) and 227(c)(5). However, section 227(c) nevertheless refers to "telephone solicitations" ten times, firmly grounding the section in the context of unsolicited communications that disturb consumers' privacy.

The United States Supreme Court agrees that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call'" for purposes of section 227(b). *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). Since "[i]t is an axiom of statutory interpretation that 'identical words used in different parts of the same act are intended to have the same meaning,'" *United States v. Trump*, 740 F. Supp. 3d 1245, 1270 (S.D. Fla. 2024) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995)), it follows that the same interpretation of the word "call" should apply to section 227(c). *See Mujahid v. Newitty LLC*, 2025 WL 3140725, at *2 (N.D. Ill Nov. 10, 2025) ("The

fact that the term "call" as used in § 227(b) encompasses "text messages," supports the interpretation that the term "call" as used in § 227(c) also encompasses "text messages.")

ii. The FCC has confirmed that text messages are calls under the TCPA.

In 2003, in recognition of the "significant changes in the technologies and methods used [by the telemarketing industry] to contact customers," the FCC applied the limitations of the TCPA to "both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* (the "2003 Order")*,* 18 FCC Rcd 14014, ¶¶ 2, 165 (2003). In 2012, the FCC reaffirmed the applicability of the TCPA to "both voice and text calls." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991* (the "2012 Order"), 27 FCC Rcd 1830, 1832 ¶ 4 (2012).

In 2015, the FCC further elaborated that it would "refer to calls that require consumer consent under the TCPA as 'robocalls,' 'covered calls and texts,' or 'voice calls and texts.'" *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991 et al.* (the "2015 Order"). 30 FCC Rcd 7961, 7964 ¶ 1 n.1 (2015). Indeed, the 2015 order confirmed that "[t]ext messages are 'calls' subject to the TCPA, as previously determined by the Commission. *Id*. at 7965 ¶ 2.

Finally, in 2023, after receiving notice and comment from the public, the FCC "adopt[ed] the proposal to codify the National DNC Registry's existing protections to

text messages." *In re Targeting and Eliminating Unlawful Text Messages, Implementation of the Tel. Consumer Prot. Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls* (the "2023 Order"), FCC 23-107, No. 02-278 ¶ 26-27 (2023). The FCC's justification included in its 2023 Order is reasonable and persuasive:

> Consumers increasingly rely on text messaging to stay in touch with friends and family, to do business, communicate with their child's school, and get information from their government. On many devices, people immediately see some or all of the messages once received on the device, whereas they have the options to ignore unwanted calls. This causes consumers to open their texts quickly because texts are an expected source of communications, not annoyance and scams. The rise of junk texts jeopardizes consumer trust in text messaging. The increase of unwanted and illegal texts also frustrate consumers, and scam texts can cause serious harm. Scam texts can contain links to phishing campaigns and load malware onto unsuspecting consumers' phones, leading to fraud and other harms.

When an agency "exercises discretion granted by a statute," as the TCPA has granted the FCC, "judicial review is typically conducted under the Administrative Procedure Act's deferential arbitrary-and-capricious standard." *Seven Cnty. Infrastructure Coal. V. Eagle Cnty.*, 145 S. Ct. 1497, 1511 (2025). This standard queries "not whether [a court] agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained." *Id.*; *see also McLaughlin Chiropractic Assocs. V. McKesson Corp.* 606 U.S. 146, 155 n.2 (2025) ("Judicial review in enforcement proceedings of course may also include review of whether the rule or order was arbitrary and capricious under the APA or otherwise was unlawful.")

Hence, the FCC's rulemaking confirming that text messages are "calls" under the TCPA should be affirmed as "reasoned decisionmaking." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024). At the very least, the FCC's decades-long, consistent, and reasonable interpretation of the word "call" should be read as an "informed judgment to which [the court can] properly resort for guidance." *Id.* at 388 (quoting *Skidmore v. Swift & Co.* 323 U.S. 134, 139-140 (1944).)

To that end, Defendant's argument that 47 C.F.R. § 64.1200(e) is not applicable to text messages under 227(c) is inapposite. The FCC, as detailed above, specifically codified text messaging as protected under its do-not-call provisions, promulgated through Section 227(c)(5). Defendant's confusion over the "limiting language" of 64.1200(e) mistakes the purpose of the limiting language itself. The 2003 Order, widely known for its initial adoption of the National do-not-call registry, also discussed "whether a subscriber to a wireless telephone service could be considered a residential telephone subscriber for purposes of the FCC Rule." United States v. Dish Network LLC, 75 F. Supp. 3d 916, 926 (C.D. Ill. 2014). Dish Network provides an instructive summary:

> "The FCC found that many consumers elect to use a wireless telephone as their residential phone service. The FCC determined that these wireless customers should receive the benefits of the protections of the FCC Rule. Based on this analysis, the FCC concluded that wireless customers could register their wireless telephone numbers on the Registry…The FCC incorporated by reference in the FCC Rule this analysis from [the 2003 Order]: '(e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers…'"

Id. (quoting 47 C.F.R. § 64.1200(e)) (emphasis added). Because the original purpose of 64.1200(e) had been to give wireless customers protection under the FCC's do-not-call provisions, its incorporation of the 2003 Order had merely been to qualify when a wireless customer may not be considered a 'residential subscriber' under the rules. See 2003 Order ¶ 36.[1] Thus, Defendant's sole reliance on the 2003 Order is unavailing.

iii. Congress has adopted a text-inclusive definition of "calls."

Congress "is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239-40 (2009). As detailed above, the FCC has repeatedly affirmed that text messages are calls under the TCPA. Time and again, courts have also confirmed the reasonableness of the FCC guidelines and affirmed the inclusion of text messages under the TCPA's use of "calls." *See Murphy v. DCI Biologicals Ontario*, 797 F.3d 1302, 1305 (11th Cir. 2015), *Drazen v. Pinto*, 74 F.4th 1336, 1343 n.5 (11th Cir. 2023) ("Congress appears to have targeted unwanted text messages (as well as unwanted phone messages) with the TCPA."); *Schaevitz v.*

[1] "Therefore, we conclude that wireless subscribers may participate in the national do-not-call list. As a practical matter, since determining whether any particular wireless subscriber is a 'residential subscriber' may be more fact-intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.' Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action."

*Braman Hyundai, Inc.*, 437 F. Supp. 1237 1248, (S.D. Fla. 2017); *Eldridge v. Pet Supermarket, Inc.*, 446 F. Supp. 3d 1063, 1067-68 (S.D. Fla. 2020); *Hall v. Xanadu Mktg*. 682 F. Supp. 3d 1278, 1285 (N.D. Ga. 2023); *see also Campbell-Ewald Co.*, 577 U.S. at 156; *Mujahid,* 2025 WL 3140725 at *3; *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953-54 (9th Cir. 2009) ("Webster's defines 'call' in this context as 'to communicate with or try to get into communication with a person by telephone' . . . We hold that a voice message or a text message are not distinguishable in terms of being an invasion of privacy"); *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 462 (7th Cir. 2020); *Abboud v. Circle K Stores Inc.*, No. CV-23-01683-PHX-DWL, 2025 U.S. Dist. LEXIS 13605 at *12 (D. Ariz. Jan. 27, 2025) ("A telephone solicitation can be a call or text message"); *Mantha v. Quotewizard.Com, LLC*, 347 F.R.D. 376, 387 (D. Mass. 2024) ("the texts from [defendant] amounted to 'telephone solicitations' within the meaning of the TCPA."); *Misner v. Empire Auto Protect, LLC*, No. 2:24-cv-1282, 2024 U.S. Dist. LEXIS 202146, at *7, 12 (S.D. Ohio Nov. 6, 2024) (receipt of unsolicited text messages supports a private right of action under Section 227(c)).

After the FCC issued its 2003 Order, Congress amended the TCPA four times. *See* PUB. L. NO. 109-21 (July 9, 2005); PUB. L. NO. 111-311 (December 22, 2010); PUB L. NO. 114-74 (November 2, 2015); PUB L. NO. 116-105 (December 30, 2019). Therefore, Defendant's references to previous Congressional amendments which left the "call" language of section 227(c) undisturbed do not support its argument, but rather

support Plaintiff's argument that Congress has adopted the definition of the courts and the FCC that "call" includes solicitations sent via text as well as those sent via voice. *See Forest Grove Sch. Dist.,* 557 U.S. at 239-40. Since Congress never acted to define "call" as noninclusive of text messages, notwithstanding abundant FCC and judicial interpretations that include text messages within the definition of "call," and instead chose to amend and re-enact the statute, Congress has evinced its intent that the term "call" includes text messages. [2]

"In sum, nothing in the text, structure, or purpose of the TCPA suggests a distinction between an unsolicited voice call and an unsolicited written text message." *Mujahid*, 25 WL 3140725 at *3. Consequently, Defendant's argument fails.

**B. DEFENDANT'S NON-COMPLIANCE WAS UNREASONABLE.**

Defendant argues that, because the July messages it sent to Plaintiff were sent fewer than 10 days after Plaintiff requested Defendant cease contact with him, its failure to comply was *per se* reasonable under 47 C.F.R. § 64.1200(d). Defendant misreads the regulation. 47 C.F.R. § 64.1200(d) provides that entities complying with

---

[2] Defendant references recent district court decisions which held that "no ordinary person would think of a text message as a 'telephone call.'" *Davis v. CVS Pharmacy, Inc.*, 4:24-cv-477-AW-MAF (N.D. Fla. Aug. 26, 2025), *Sayed v. Naturopathica Holistic Health, Inc.*, 25-cv-00847-SDM-CPT (M.D. Fla. Oct. 24, 2025). These cases ignore that Congress was on notice that the FCC and courts interpreted "telephone call" as including text messages and re-enacted the TCPA without clarifying the definition of "call." Furthermore, to the extent these decisions reference the "plain meaning" of the term "telephone call," they ignore that "call" may be defined broadly to encompass any effort "to communicate with or try to get into communication with a person by telephone." *See Satterfield,* 569 F.3d at 953-54 (quoting the Webster's Dictionary definition of "call."), *Mujahid*, 2025 WL 3140725 at *2. Hence, reliance on statutory context is essential to effectuate Congressional intent.

the TCPA "must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made" and that "[t]his period may not exceed ten (10) business days from the receipt of such request." Phrased differently, a would-be TCPA defendant must comply with a stop request within a reasonable time, and the FCC has determined that complying more than 10 days from the date of the request is *per se* unreasonable. However, the FCC only defines that a "reasonable time" under the TCPA "*may not exceed* ten (10) business days." [emphasis added] *Id*. The reasonableness of a Defendant's non-compliance with a stop request within fewer than 10 days is a fact question unsuited for disposition during the pleading stage. *See Menin v. Star Mkts. Co.*, 2024 U.S. Dist LEXIS 161422 at *16 (D. Mass. 2024) ("[W]hat constitutes the 'shortest reasonable time' is still a question of fact.").

**C. THE LEGISLATIVE HISTORY OF THE TCPA SUPPORTS A PRIVATE RIGHT OF ACTION FOR VIOLATIONS OF THE DO-NOT-CALL REQUIREMENTS OF 47 C.F.R. § 64.1200.**

Defendant closes its motion by arguing that the TCPA does not authorize private rights of action for violations of 47 C.F.R. § 64.1200(c)(2). Defendant contends that, because the national do-not-call list and associated regulations were not promulgated during the period of rulemaking described in 47 U.S.C. §§ 227 (c)(2) and (c)(3), Congress was powerless to effect future rulemaking under the subsection. This

argument is premised on a misunderstanding of Congressional authority and, hence, fails.

Defendant argues that, once the period of rulemaking described in section 227(c) expired, Congress had no power to effect new regulations under the TCPA. However, "statutes enacted by one Congress cannot bind a later Congress, which remains free to repeal the earlier statute, to exempt the current statute from the earlier statue, to modify the earlier statute, or to apply the earlier statute but as modified. [citations omitted] And Congress remains free to express any such intention either expressly or by implication as it chooses." *Dorsey v. United States*, 567 U.S. 260, 274 (2012). *See also Fletcher v. Peck*, 10 U.S. 87, 135 (1810) ("[O]ne legislature cannot abridge the powers of a succeeding legislature.").

Congress enacted the TCPA in December 1991. The FCC initiated rulemaking under the TCPA and declined to create a national do-not-call registry at that time. Recognizing that a need for such a registry remained extant, Congress enacted 15 U.S.C. § 6101 (the "Telemarketing Act"), pursuant to which the FCC promulgated the Telemarketing Sales Rule, 16 C.F.R. § 310.1. In March 2003, Congress enacted the Do Not Call Implementation Act, 15 U.S.C. §§ 6151, *et seq*. Under this new statute, Congress directed that "the [FCC] shall issue a final rule . . . under the Telephone Consumer Protection Act (47 U.S.C. 227 et seq.)." 15 U.S.C. § 6153. Congress further

provided that "the [FCC] shall consult and coordinate with the [FTC] to maximize consistency with . . . 16 CFR 310.4(b)." *Id*.

Hence, Congressional intent is clear. Congress sought that a do-not-call registry exist, that it be maximally consistent with the FTC's do-not-call rules, and that the rulemaking conducted pursuant to 15 U.S.C. § 6153 produce regulations under 47 U.S.C. §§ 227, *et seq*. The limitations prescribed by the 102nd Congress do not and cannot prevent the 108th Congress from effecting new regulations in response to the needs and expressed priorities of the American public, even if the terms of those regulations differ from what their predecessors envisioned. Since the 108th Congress saw fit to require the FCC and FTC to coordinate the creation of a do-not-call registry, and to promulgate regulations under the TCPA to structure that registry, consumers are correspondingly able to bring private suits for violations of those same regulations pursuant to 15 U.S.C. § 227(c)(5).

Indeed, nearly all courts have found that individuals have a private right of action pursuant to 47 C.F.R. § 64.1200 et seq., which includes Section (c)(2). *See Lucombe v. Harborview Cap. Holdings L.L.C.*, 2025 U.S. Dist. LEXIS 199395, at *8-9 (M.D. Fla. Oct. 8, 2025) ("Section 227(c)(5) creates a private right of action for violations of FCC regulations promulgated under 47 U.S.C. § 227(c)…Section 227(c) enables plaintiffs to pursue a private right of action for 'telephone solicitations' in 'violation of a FCC regulation prescribed under the TCPA"); *Hudson v. Palm Beach Tan, Inc.*, 2024 U.S.

Dist. LEXIS 165676, at *4-5 (M.D.N.C. Aug. 12, 2024) (finding the TCPA grants a private right of action under 64.1200(c)(2)); *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1120 (W.D. Mo. 2020) ("A cell phone user can qualify as a residential telephone subscriber under 47 C.F.R. § 64.1200(c) and (d)"); *Pariseau v. Built USA, LLC*, 619 F. Supp. 3d 1203, 1206 (M.D. Fla. 2022) (denying motion to dismiss under 227(c) for violations of the do-not-call protections of 47 C.F.R. § 64.1200(c) and (d)); *Baalen v. Mut. Of Omaha Ins. Co.*, 729 F. Supp. 1239, 1250-51 (D.N.M. 2024) (same); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019) ("the law allows a private right of action for violations of the Do-Not-Call registry regulations"); *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 363 (E.D. Penn. 2019) ("the Court concludes that Plaintiffs are entitled to $500 for each phone call made to Plaintiff's phone in violation of § 227(c)(3) and § 64.1200(c)(2).)

## IV. **CONCLUSION**

All three of Defendant's arguments fail. Text messages constitute actionable violations under § 227(c)(5), which is supported by statutory construction, binding FCC regulations, and the vast majority of case law. Further, Defendant's imagined regulatory exemption period does not exist. The plain language of the regulation supports that a Defendant's non-compliance within fewer than ten days can be actionable, provided said non-compliance was not reasonable. While it was clearly not reasonable in Plaintiff's situation, this is a fact question not suitable at this stage of

litigation. Finally, Plaintiff's internal do not call claim is privately actionable based on Congress's actions and the FCC's promulgation authority. Thus, this Court should deny Defendant's motion to dismiss in its entirety.

Dated: November 18, 2025 Respectfully submitted,

BY: /S/ RYAN L. MCBRIDE______
RYAN L. MCBRIDE, ESQ.
TRIAL COUNSEL FOR PLAINTIFF

Mohammad Kazerouni
Florida State Bar No. 1034549
**Kazerouni Law Group, APC**
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
mike@kazlg.com

Ryan L. McBride
Florida State Bar No. 1010101
**Kazerouni Law Group, APC**
2221 Camino Del Rio. S., #101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
ryan@kazlg.com