**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

**CASE NO. 6:25-cv-01613**

DANIEL INTERNICOLA,
individually and on behalf of
others similarly situated,

Plaintiffs,

v.

MORTGAGEPROS, LLC,

Defendant.
______________________________/

**DEFENDANT MORTGAGEPROS, LLC'S OBJECTIONS TO**
**MAGISTRATE JUDGE REPORT AND RECOMMENDATION**

In accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72.2, Defendant MortgagePros, LLC ("**MPros**" or "**Defendant**") objects in part to United States Magistrate Judge Leslie Hoffman Price's Report and Recommendation (ECF No. 36; "**Recommendation**") related to MPros' Motion to Dismiss (ECF No. 18; "**Motion**") Plaintiff's First Amended Complaint (ECF No. 13; "**FAC**") which recommended that the Motion be denied in part. For the reasons stated as follows, MPros respectfully requests that this Honorable Court overrule, in part, the Recommendation.

**ISSUES BEFORE THE COURT**

MPros respectfully objects to the Recommendation because the Magistrate

erred in (1) finding that alleged violation of 47 C.F.R. § 64.1200(c) can be pursued through 47 U.S.C. § 227(c)(5)'s right of action; and (2) finding that the FAC plausibly states a claim for violation of 47 C.F.R. § 64.1200(d).

**STANDARD OF REVIEW**

After a party timely objects to a magistrate judge's recommended decision, the Court must review *de novo* any portion of the recommendation objected to. Fed. R. Civ. P. 72(b)(3). Based on its review, the Court may then accept, reject, or modify the recommended disposition or return the matter to the magistrate judge with instructions. *Id.*

**ARGUMENTS AND AUTHORITIES**

1. **Objection No 1: The Magistrate Erred in Finding That Violation of 47 C.F.R. § 64.1200(c) Can Be Pursued Through 47 U.S.C. § 227(c)(5)'s Right of Action**

On the issue of whether 47 C.F.R. § 64.1200(c) is a regulation prescribed under 47 U.S.C. § 227(c) for purposes of § 227(c)(5)'s right of action, the Recommendation allows Count One to proceed chiefly on the basis of an absence of any contrary case authority from Defendant. However, that MPros' analysis relied solely on the relevant statutes and FCC regulations and rulemakings, rather than case law, was anticipated. In fact, MPros noted that the issues presented in the Motion were novel and matters of first impression in its request for oral argument of its Motion, filed concurrently with the Motion itself. *See* ECF No. 19. The Recommendation thus erred both in penalizing MPros for advancing a novel legal argument of first impression and then in its subsequent disregard for MPros'

statutory analysis supporting that argument.

In preparing its Motion, it became evident that 15 U.S.C. § 6153 had only been cited in 7 cases in the more than two decades following enactment, and in no case was a court asked to determine whether the statute serves as the source of the FCC's rulemaking authority for § 64.1200(c). It is therefore necessary to conduct a thorough analysis of the relevant statutes to determine this issue.

The lack of case law only serves to underscore the Recommendation's failure to identify a case in which a Court engaged in the statutory analysis which could support the conclusion that § 64.1200(c) was promulgated pursuant to § 227(c). The failure results in the Recommendation's reliance upon cases which decided a variety of issues, none of which involved reconciling the tension between 15 U.S.C. § 6153 and 47 U.S.C. § 227(c) relating to the FCC's National Do Not Call ("NDNC") rulemaking authority. Moreover, those courts not only decided issues other than what MPros' Motion presented, but each one did so only after presuming, or otherwise stating as a conclusion, that relief for an alleged violation of § 64.1200(c) can be pursued through § 227(c)(5). But in no instance was a basis provided for why the presumption was made or how the conclusion was reached.

The in-district and in-circuit authority cited in the Recommendation is no exception. For example, in *Pariseau v. Built USA, LLC*, 619 F.Supp.3d 1203 (M.D. Fla. 2022), the Court noted that "Built USA asserts no challenge to the claim that each text message violated § 64.1200(c) or (d). Instead, Built USA

argues that Counts I and II fail to state a claim because 47 U.S.C. § 227(c)(5) confers a claim on a receipt of at least two 'telephone calls' – not text messages." *Id.* at 1206. And, with respect to *Lucombe v. Harborview Cap. Holdings, LLC*, 2025 U.S. Dist. LEXIS 199395 (M.D. Fla. Oct. 8, 2025), *report and recommendation adopted*, 2025 U.S. Dist. LEXIS 220856 (M.D. Fla. Nov. 10, 2025), the complaint was deemed not only to be an impermissible shotgun pleading but also was dismissed because it had failed to state a claim for relief insofar as the allegations demonstrated that the communications were not "telephone solicitations" for purposes of the § 227(c) regulations.

That these cases did not reach the question of the true source of rulemaking authority from which § 64.1200(c) derived is of little surprise, however. The issue was not presented to the Court and "it has remained a cardinal principle of judicial restraint that where 'it is not necessary to decide more, it is necessary not to decide more.'" *Bastias v. United States Att'y Gen.*, 158 F.4th 1188, 1207 (11th Cir. 2025) (quoting *Dean v. Warren*, 12 F.4th 1248, 1268 (11th Cir. 2021)). Dismissal decisions were reached on the grounds presented to the Court, and it was neither asked nor required to reach the issue MPros presented in the Motion.

Finally, for two reasons the Recommendation's reliance on *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019) for the supposed proposition that "the Eleventh Circuit has stated that "[t]he FCC promulgated regulations creating a national do-not-call list" is similarly flawed. First, because *Cordoba* concerned the issue of standing in the context of an alleged violation of § 64.1200(d), the

statement concerning the FCC's regulations related to the NDNC is no more than dicta. Second, it is factually incorrect to state that the FCC created the national do-not-call list. It was the FTC's agency action on January 29, 2003 which formally created the National Do Not Call registry. *See* 68 FR 4580 (2003). The FCC's rules concerning compliance with the NDNC were not enacted until later that year when they were adopted on July 25, 2003. *See* 68 FR 44144 (2003).

By reason of the foregoing, MPros respectfully submits that a comprehensive statutory analysis is required to resolve this issue but that the Recommendation failed to conduct such an analysis.

**2. Objection No. 2: The Magistrate Erred in Finding That the FAC Plausibly States a Claim for Violation of 47 C.F.R. § 64.1200(d)**

**a. The FAC Does Not Plausibly Allege Violation of 47 C.F.R. § 64.1200(d)**

The Recommendation accurately observed that elimination of text messages from the purview of Plaintiff's § 227(c)(5) claim leaves only 6 telephone calls between July 1 and July 7, 2025. The Recommendation incorrectly concludes, however, that a reasonableness determination concerning these calls would be required to find that the FAC does not plausibly plead an alleged violation of § 64.1200(d). That is not the case, though – the FAC's allegations themselves demonstrate that an alleged violation has not been plausibly pled, particularly because 3 of the calls occurred the same day as Plaintiff's opt-out, meaning that only 3 calls occurred after the date of opt-out.

In order to sufficiently "plead a TCPA claim under § 64.1200(d), a Plaintiff

must plausibly allege 'that the entity placing the calls failed to institute the proper procedures *prior* to the initiation of the call.'" *Hulett v. Eyebuydirect, Inc.*, 2025 U.S. Dist. LEXIS 112645, at *9 (N.D.N.Y. June 13, 2025) (quoting *Barr v. Macys.com*, 2023 U.S. Dist. LEXIS 176653, at *4 (S.D.N.Y. 2023)). As explained in *Hulett*, even where courts recognize that allegations of continued contact after an alleged opt-out *may* be sufficient to plausibly suggest the failure to implement required internal procedures prior to telemarketing, it does not follow that *any* allegations of continued contact after a plaintiff's opt-out are sufficient to state a claim. *Hulett*, 2025 U.S. Dist. LEXIS, at *9. It thereafter persuasively stated that "allegations of continued telemarketing calls *may* be sufficient to plausibly suggest a defendant is liable, particularly where alleged period of continued telemarketing is arguably unreasonable," but that it undermines the complaint's ability to support an inference of § 64.1200(d) liability when the allegations demonstrate that a plaintiff's opt-out request was honored within a reasonable period.

Thus, when examining cases in which courts have denied motions to dismiss, it is easy to see how distinguishable Plaintiff's experience was from those in which courts have been unwilling to dismiss at the pleading stage. For example, in *Mattson v. Quicken Loans, Inc.*, 2018 U.S. Dist. LEXIS 180737 (D. Ore. Oct. 22, 2018), the Court found a plausibly pled violation of § 64.1200(d) where the plaintiff had alleged continued telemarketing beyond 30 days after a request not to be called. Similarly, in *Adam v. CHW Grp., Inc.*, 2021 U.S. Dist. LEXIS 170620

(N.D. Iowa Sept. 9, 2021), violation of § 64.1200(d) was plausibly pled where the plaintiff alleged continued offending telephone solicitations occurring more than two months after an opt-out. So too in *Menin v. Star Mkts. Co.*, 2024 U.S. Dist. LEXIS 161422 (D. Mass. Sept. 9, 2024) where the plaintiff alleged continued marketing over the course of 21 days after multiple opt-outs. These stand in marked contrast to the facts here, in which Plaintiff received 3 calls on the date of opt-out and only 3 calls a mere 3 business days thereafter.

As part of the most recent amendment to 47 C.F.R. § 64.1200(d)(3), which adjusted the opt-out processing timeframe down from 30 calendar days to 10 business days, the FCC explained why it abandoned a proposed 24-hour timeframe:

> "The Commission revises its proposed 24-hour timeframe in response to commenter concerns the proposed 24-hour timeframe would not be feasible in many instances. The Commission is persuaded by the record, including comments from consumer organizations, that a longer timeframe is justified to ensure that entities, including smaller entities, have a reasonable opportunity to process the do-not-call and revocation requests. The Commission believes this outcome adequately balances the burdens on callers with the privacy protections afforded to consumers, with a "no longer than 10 business days" backstop to ensure that consumers have certainty about when they can expect unwanted communications to stop." 89 FR 15756, 15759 (2024).

The FAC's allegations thus demonstrate that the amount of time that it took MPros to honor Plaintiff's opt-out request was entirely consistent with the policy considerations identified by the FCC when enacting the current version of § 64.1200(d)(3). MPros not only respected Plaintiff's privacy by not placing telephone calls to him after the regulation's 10-business day timeframe had

passed, but it exceeded the protections afforded by the regulation by ceasing calls after 3 business days. The inference to draw from this is not that a jury is required to decide whether 3 business days is a reasonable amount of time to honor the opt-out, but rather that MPros had written do-not-call policies in place prior to ever contacting Plaintiff and that those policies led to the successful processing and honoring of his opt-out request, whereupon after only 3 business days he never received another telephone call from MPros.

To that end, the Recommendation overlooks a conspicuous omission from the FAC which courts otherwise typically point to when finding that § 64.1200(d) violation has been plausibly pled: an allegation of a request for production of a defendant's written internal do-not-call policies. In such cases, courts find that allegations of § 64.1200(d) violation are bolstered when a defendant has failed to provide the written policy upon request because it is not the failure to honor the opt-out request that violates the regulation, but rather, the failure to have internal do-not-call policies in place prior to make any telemarketing call in the first instance. *See, e.g., Menin,* 2024 U.S. Dist. LEXIS at *3 (acknowledging that "[r]equesting a company's internal procedures can 'bolster' a [Section 64.1200(d)] claim" even if not a pleading requirement); *see also Callier v. Def. Home Loans, Inc.*, 2022 U.S. Dist. LEXIS 205057, at *5 (W.D. Tex. Nov. 10, 2022) ("The Court accepts Mr. Callier's allegation that he emailed the address Defendant provided, requesting a copy of their DNC Policy. Upon accepting these facts, the Court 'draw[s] the reasonable inference' that Defendant does not have

a DNC policy, available upon request, in violation of the TCPA.") (citation omitted).

For these reasons, the Recommendation erred in finding that the FAC plausibly alleges violation of 47 C.F.R. § 64.1200(d).

### b. MPros' Argument Regarding The Limitations on the FCC's Rulemaking Authority Was Not Perfunctory

The Recommendation inappropriately deemed as perfunctory MPros' argument regarding the scope of FCC rulemaking authority concerning § 64.1200(d). However, it is when arguments are underdeveloped or unsupported by authority that they are deemed to be waived as perfunctory. That is simply not the case with respect to MPros' arguments concerning the FCC's rulemaking authority vis-à-vis § 64.1200(d).

MPros explicitly argued in note 8 of the Motion that subsequent to § 64.1200(d)'s initial promulgation, the FCC lacked the statutory authority to amend the regulation to require either that an opt-out be honored within 10 days and/or that such a request be honored for a period of 5 years, because neither such requirement was included in the FCC's initial 1992 rulemaking. In support of that argument, MPros expressly incorporated by reference the fully developed and comprehensive reasoning set forth in Section 3 of MPros' Motion, which contained a detailed analysis concerning the statutory limitations on the rulemaking authority conferred by 47 U.S.C. § 227(c), which is the statute from which authority to prescribe § 64.1200(d) was derived. Section 3(i) of MPros'

Motion is titled "§227(c) Expressly Limits the Scope of the FCC's Rulemaking Authority," while subheading (a) thereof is entitled "The Statute Imposes a Deadline by Which § 227(c) Rules Were to be Prescribed." This is the exact argument explicitly stated by MPros' when incorporating Section 3 by reference.

MPros did not waive this argument by presenting it in a perfunctory manner. It was fully developed in a separate section of the Motion, but its logic, reasoning, and analysis apply with equal force to both § 64.1200(c) and (d). It would have both been an ill use of the limited pages allotted by LR 3.01(b) and unduly repetitive to restate the analysis detailing the limitations on the FCC's § 227(c) rulemaking authority when it, and the related argument, are identical for both regulations. It was error by the Recommendation to disregard MPros' argument as perfunctory and then to evade the statutory analysis after so erring.

**REQUEST FOR RELIEF**

MPros respectfully requests that the Court sustain its objections to the Recommendation and dismiss all claims asserted against it pursuant to Fed. R. Civ. P. 12(b)(6).

DATED: July 30, 2026

Respectfully submitted,

KLEIN MOYNIHAN TURCO LLP

By: */s/ Dustin P. Mansoor*
Dustin P. Mansoor
(*admitted pro hac vice*)
450 7th Avenue – 40th Floor
New York, NY 10123
Telephone: (212) 246-0900
Email: dmansoor@kleinmoynihan.com

*Counsel for Defendant MortgagePros, LLC*

**Certification Under Penalty of Perjury That Artificial Intelligence Was Not Used in the Preparation of This Filing**

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. After diligent inquiry and under penalty of perjury, I certify that artificial intelligence was not utilized in the preparation of this filing in any way. I understand that, whether I represent myself or I am an attorney representing a client, I have an affirmative obligation to read each case cited in this filing. If I fail to do so and a case upon which I rely does not exist or does not reasonably stand for the cited proposition, I understand that the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a

violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.

/s/ *Dustin P. Mansoor*
Dustin P. Mansoor

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 30, 2026, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

/s/ *Dustin P. Mansoor*
Dustin P. Mansoor