**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DANIEL INTERNICOLA, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED;**

**Plaintiff,**

**v.** **Case No.: 6:25-cv-01613-AGM-LHP**

**MORTGAGEPROS, LLC,**

**Defendant.**

---

**ORDER**

THIS CAUSE comes before the Court on the Magistrate Judge's Report and Recommendation (Doc. # 36; the "Report"), in which the Magistrate Judge recommended that the Court grant Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. # 18; the "Motion") in part. MortgagePros objected to portions of the Report (Doc. # 51). Mr. Internicola responded (Doc. # 52). For the reasons stated below, MortgagePros's objections are sustained in part and overruled in part.

## I. BACKGROUND

In 2008, Mr. Internicola registered his cell phone number with the National Do-Not-Call Registry. In April 2025, Mr. Internicola wanted to refinance his mortgage, so he engaged MortgagePros. On July 1, 2025, he called MortgagePros, terminated the engagement, and asked MortgagePros to transfer some appraisal documents to a different company. During that July 1, 2025, telephone call, Mr. Internicola explicitly withdrew his prior consent to be contacted by MortgagePros.

The Amended Complaint leaves something to be desired in clarity on the sequence of events, but it does allege that at some point on July 1, 2025, Mr. Internicola explicitly withdrew his consent to be contacted by MortgagePros, and it also alleges that MortgagePros called three times on that day. And the Amended Complaint further alleges that, after July 1, 2025, MortgagePros sent Mr. Internicola four texts on July 3, 2025, two texts and three calls on July 7, 2025, and one text on July 9, 2025.

Mr. Internicola filed this suit in August 2025. After filing this case, he received two more texts from MortgagePros on September 16 and 18, 2025.

In his Amended Complaint, Mr. Internicola asserts that MortgagePros's unsolicited text messages and phone calls violated regulations prescribed under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c). The Amended Complaint asserts two counts. Count I alleges MortgagePros violated 47 C.F.R. § 64.1200(c). Count II alleges that MortgagePros violated 47 C.F.R. § 64.1200(d). Mr. Internicola alleges entitlement to statutory damages, injunctive relief, and an award of costs and fees for his attorneys.

MortgagePros moved to dismiss for failure to state a claim. The Motion first argued § 227(c)(5)'s right of action applied only to telephone calls and does not provide a right of action related to text messages. The Motion also argued that the Amended Complaint does not plausibly assert a violation of § 64.1200(d) because the allegations reflect that MortgagePros honored Mr. Internicola's request for no further contact within a reasonable time. Finally, the Motion contended that § 227(c)(5) does not provide a private right of action for violations of regulations prescribed outside the statutory time limit found in 47 U.S.C. § 227(c)(2), and sections 64.1200(c) and (d) were prescribed after the statutorily-defined period.

The Report recommended that the Motion be granted in part and denied in part. It agreed with MortgagePros that the text messages were not "telephone calls" for purposes of § 227(c)(5), and recommended dismissal to the extent Plaintiff's Amended Complaint is premised on unwanted text messages. But the Report disagreed with MortgagePros's interpretation of § 64.1200(c)'s statutory authority, citing MortgagePros's lack of citation to case law in its Motion. The Report concluded that MortgagePros's argument about reasonableness required the resolution of fact disputes.

## II. LEGAL STANDARD

When a party makes timely and specific objections to a report and recommendation, the Court conducts a de novo review of the portions of the record to which objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Following that independent review, the Court may accept, reject, or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

Rule 12(b)(6) permits dismissal when a plaintiff fails "to state a claim upon which relief can be granted." On a motion to dismiss, the court generally "limits its consideration to the pleadings and exhibits attached thereto." *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006) (citation modified). A complaint withstands dismissal under Rule 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the complaint, all facts are accepted as true, and all reasonable inferences from those facts are drawn in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678. Legal conclusions couched as facts are not accepted as true. *See Papasan v. Allain*, 478 U.S. 265, 286

(1986). Although detailed factual allegations are not required, the complaint must contain more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678. All in all, "the 'factual allegations must be enough to raise a right to relief above the speculative level.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

### A. 47 U.S.C. § 227(c)(5) Does Not Apply to Text Messages.

The Report recommended that the Motion be granted to the extent that Counts I and II should be limited to seeking relief arising from telephone calls, not text messages. No objection was raised to this portion of the Report, and for the reasons stated in the Report the Court agrees with and adopts the analysis. Counts I and II are due to be dismissed with leave to amend.

### B. 47 C.F.R. § 64.1200(c) Does not Provide a Private Right of Action Under 47 U.S.C. § 227(c)(5).

Next, MortgagePros objects to the Report's recommendation that the Motion be denied to the extent it argued that 47 C.F.R. § 64.1200(c) does not provide a private right of action under 47 U.S.C. § 227(c)(5). The Report rejected MortgagePros's argument on the basis that it cited no case law for its novel interpretation. For the reasons that follow, MortgagePros's objection to this part of the Report is sustained.

The Telephone Consumer Protection Act, enacted in 1991, created a private right of action for "any person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). The TCPA provided that "within 120 days" a commission

must "initiate a rulemaking proceeding" concerning "the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," and specifically consider the feasibility of databases and "do not call" systems, and then propose regulations. 47 U.S.C. § 227(c)(1). By statute, Congress required that the rulemaking process "shall conclude" "[n]ot later than 9 months after December 20, 1991." *Id.* § 227(c)(2).

After the TCPA was enacted, the Federal Communications Commission ("FCC") issued a Notice of Proposed Rulemaking to implement the TCPA, but the proposed rulemaking did not involve adoption of a national do-not-call registry. *See In re TCPA*, 7 F.C.C. Rcd. 2736 (proposed April 17, 1992). The FCC did not adopt a regulation that required a national do-not-call list, but did adopt regulations that required telemarketers to maintain their own internal do-not-call lists. 47 C.F.R. § 64.1200(e)(2)(iii), (vi) (1992); *see* 57 Fed. Reg. 48333-01; *see In re TCPA*, 7 F.C.C. Rcd. 8752 (September 17, 1992).

On January 30, 2002, the Federal Trade Commission ("FTC") issued a notice of proposed rulemaking to create what would become the National "Do-Not-Call" Registry. The National Do-Not-Call Registry was adopted on January 29, 2003, with an effective date of March 31, 2003. *See* 68 Fed. Reg. 4580-01.

On March 11, 2003, Congress enacted the Do-Not-Call Implementation Act. *See* Pub. L. No. 108-10, 117 Stat. 557 (codified, as amended, at 15 U.S.C. § 6153). The Do-Not-Call Act mandated that the FCC "shall issue a final rule pursuant to the rulemaking proceeding that it began on September 18, 2002, under the [TCPA]," within 180 days of March 11, 2003. 15 U.S.C. § 6153. On July 25, 2003, the FCC issued regulations "establish[ing] with the Federal

Trade Commission . . . a national do-not-call registry." That rulemaking proceeding resulted in 47 C.F.R. § 64.1200(c).

Shortly after 47 C.F.R. § 64.1200(c) was promulgated, a federal court in Oklahoma ruled that the FTC lacked statutory authority under 15 U.S.C. § 6102(a) to create the Registry. *See U.S. Sec. v. F.T.C.*, 282 F. Supp. 2d 1285, 1291 (W.D. Okla. 2003), *rev'd sub nom. Mainstream Mktg. Servs., Inc. v. F.T.C.*, 358 F.3d 1228 (10th Cir. 2004). On September 29, 2003, Congress ratified the creation of the National Do-Not-Call Registry, stating that the FTC had the authority to do so under 15 U.S.C. § 6102(a)(3)(A). *See* 15 U.S.C. § 6151.

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001); *see In re Wild*, 994 F.3d 1244, 1255 (11th Cir. 2021) (citation modified) (citing *Sandoval*, 532 U.S. at 287) ("Our lodestar is . . . *Sandoval*, in which the Supreme Court . . . unequivocally swore off its old habit of venturing beyond Congress's intent to liberally imply private rights of action in favor of a rigorous attention to statutory text and structure."). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286. If the text of a statute does not clearly express that Congress created a private right of action, then the cause of action does not exist "and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87. "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Id.* at 290. "[W]hile regulations that merely interpret a statute may provide evidence of what private rights Congress intended to create, 'regulations that go beyond what the statute itself requires' are

not enforceable through a private right of action." *Love v. Delta Air Lines*, 310 F.3d 1347, 1354 (11th Cir. 2002) (internal citation omitted) (quoting *Sandoval*, 532 U.S. at 293 n.8).

The statute at issue here, 47 U.S.C. § 227(c)(5), provides a private right of action for those who have been called twice or more within a year's time by an entity "in violation of the *regulations prescribed under this subsection*." *Id.* (emphasis added). Mr. Internicola contends that 47 C.F.R. § 64.1200(c) was prescribed under 47 U.S.C. § 227(c). MortgagePros argues that Mr. Internicola's argument is foreclosed by the text of § 227(c)(2), which required rulemaking proceedings under § 227(c) to "conclude" "[n]ot later than 9 months after December 20, 1991." Section 64.1200(c) was promulgated in 2003, well after that time. MortgagePros argues that the Do-Not-Call Implementation Act, passed in 2003, was the source of the FCC's rulemaking for § 64.1200(c).

To "prescribe" regulations means to "ordain, or direct" them. *Prescribe*, BLACK'S LAW DICTIONARY (12th ed. 2024). Under § 227(c)(2), any "prescribed" regulations were to arise from a rulemaking proceeding that was statutorily-required to conclude "[n]ot later than 9 months after December 20, 1991." § 227(c)(2). The rulemaking process required by § 227(c)(1) concluded "[n]ot later than 9 months after December 20, 1991" without the creation of a national do-not-call registry.

In considering how Congress limited the private right of action under § 227(c), it is helpful to compare that subsection to 47 U.S.C. § 227(b), which related to automated telephone equipment. In § 227(b)(3), Congress created a private right of action for "[a] person or entity" to bring "an action based on a violation of this subsection or the regulations

prescribed under this subsection." But in § 227(b), Congress did not require that the rulemaking process conclude by a certain date. *See also* 47 U.S.C. §§ 227(d)–(e).

While MortgagePros's interpretation gives effect to the text of § 227(c), Mr. Internicola's interpretation would defy the text. Considering the plain text of § 227(c)(5), the "regulations prescribed under this subsection" is appropriately read in the context of § 227(c)(2), which makes clear that "regulations prescribed under this subsection" must be prescribed in a rulemaking proceeding concluded "[n]ot later than 9 months after December 20, 1991." Consequently, this part of MortgagePros's objection to the Report is sustained because § 227(c)(5) does not provide a private right of action under regulations that were not prescribed by the statutory deadline supplied in § 227(c)(2).

**C. Analysis of Reasonableness Not Appropriate at This Stage.**

MortgagePros also objects to the Report to the extent that it found that Count II plausibly stated a claim for violation of 47 C.F.R. § 64.1200(d). Count II alleges that Mr. Internicola suffered six telephone calls from MortgagePros placed between July 1, 2025, and July 7, 2025. MortgagePros notes that, according to the allegations of the Amended Complaint, three of the six calls were on the same date that Mr. Internicola withdrew his consent to be contacted. This leaves three telephone calls alleged to have been made after the date of the opt-out. While MortgagePros argues that the appropriate inference to be drawn from these allegations "is not that a jury is required to decide whether 3 business days is a reasonable amount of time to honor the opt-out," this argument will be more appropriately considered after the complaint is amended. If and when Mr. Internicola amends the complaint, he must provide a more definite statement about the sequence of events on July 1,

2025, making clear when the phone calls were received in relation to Mr. Internicola's unequivocal request for no further contact. MortgagePros's objection on this issue is overruled, without prejudice to its ability to raise the argument again if and when the complaint is amended.

## IV. CONCLUSION

For the reasons stated here, MortgagePros's objections are sustained in part and overruled in part and the Report is adopted in part. Counts I and II are dismissed with leave to amend by October 2, 2026, if the complaint can be amended consistent with this Order and Rule 11 of the Federal Rules of Civil Procedure.

Accordingly, it is now

**ORDERED** and **ADJUDGED** that:

1. The Report and Recommendation (Doc. # 36) is **ADOPTED** in part. Its analysis in Sections A and C are made part of this Order as if fully set forth herein;
2. Defendant's Motion to Dismiss (Doc. # 18) is **GRANTED IN PART**;
3. Plaintiff's Amended Complaint (Doc. # 13) is **DISMISSED** as to Count I and II, without prejudice, and with leave to amend not later than October 2, 2026.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this September 24, 2026.

ANNE-LEIGH GAYLORD MOE
UNITED STATES DISTRICT JUDGE

**Copies to:**

Counsel of Record